Thomas M. Sweeney and Phyllis A. Sweeney v. Commissioner.
Sweeney v. Commissioner
Docket No. 2966-62.
United States Tax Court
T.C. Memo 1964-324; 1964 Tax Ct. Memo LEXIS 15; 23 T.C.M. (CCH) 2005; T.C.M. (RIA) 64324; December 17, 1964
*15 During the taxable years 1957 and 1959 petitioners sold or exchanged seven parcels of real estate upon which petitioners had built houses. Held, petitioners are entitled to capital gain treatment as to six of the parcels but are not so entitled as to one. Richard F. Stone, Allied *16 Arts Bldg., Lynchburg, Va., for the petitioners. Douglas O. Tice, Jr., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: Respondent determined deficiencies in income tax for the calendar years 1957 and 1959 in the amounts of $10,838.20 and $13,080.05, respectively. The only issue is whether petitioners are entitled to capital gain treatment on the disposition of seven parcels of real estate upon which petitioners had built houses. No issue was raised with reference to the small deficiency and addition to tax under section 6651(a), I.R.C. 1954, determined for 1958. Findings of Fact Some of the facts were stipulated and are incorporated herein by reference. Petitioners are individuals whose residence is, and was during the taxable years, in Lynchburg, Va. They filed joint returns for the years 1957 and 1959 with the district director of internal revenue at Richmond, Va. Thomas M. Sweeney, hereinafter referred to as the petitioner, is a builder and general contractor licensed to do business in the City of Lynchburg, Va., and the adjoining Campbell and Bedford Counties. Petitioner operates as a sole *17 proprietorship and has been in business since 1950. Projects undertaken by petitioner in his business include the construction of schools, churches, and major repairs, and alterations to buildings, as well as the building of residential properties for sale. Petitioner often makes competitive bids for construction jobs, for which he does his own estimating. During the years here involved (1957 and 1959) petitioner reported net operating income from his contracting business of $3,881.40 and $29,675.31, respectively, computed as follows: 1957
1959
Total Receipts
$113,649.62
$208,340.61
Less Cost of Goods Sold
102,451.37
159,988.86
Gross Profit on Sales
$ 11,198.25
$ 48,351.75
Less Operating Expenses
7,316.85
18,676.44
Net Operating Income
$ 3,881.40
$ 29,675.31
During the years here involved petitioner, in addition to his contracting business, held for rental purposes four apartments on Rivermont Avenue, a house on Timberlake Highway, a house called the Taylor property, and four apartments on Grace Street. During the years here involved, petitioner disposed of seven parcels of real estate upon which he had built houses. The names of the parcels, *18 the year of disposition, the nature of disposition, and the profit or (loss) from the disposition are as follows: Profit or
Name
Year
Nature
(Loss)
Fazzi
1957
Sale
$14,861.92
McCarthy
1957
Sale
15,112.33
Boyd
1957
Sale
12,350.00
Royal Oaks
1959
Sale
5,148.06
Savoy Place
1959
Trade
(5,173.09)
Bishop
1959
Sale
4,207.22
Gifford-
Link Road
1959
Sale
31,363.70
Fazzi This property was located on Brookville Lane in Richland Hills, Lots 75-77. Petitioner built the house on this property with the intention of using it as a residence for himself, his wife, their three children and his wife's parents who were then living apart from the petitioners. The mother of petitioner's wife had been an invalid for over 14 years and petitioners thought it might be a solution to their problem of caring for the elderly parents to have the parents come and live with petitioners. About that time new industries were moving into Lynchburg and homes were at a premium. A real estate agent approached petitioner with the intention of buying the Fazzi property. Petitioner informed the agent that the property was not for sale. Later, petitioners decided *19 against taking this particular house as their residence, and, on or about May 9, 1957, sold the property for $23,105.46 or at a profit of $14,861.92. The property was held for more than 6 months prior to the sale. It was not held by petitioner primarily for sale to customers in the ordinary course of his trade or business. McCarthy This property was located on Peachtree Road in Richland Hills, Lot 26, section 3. Petitioner built the house on this property from a sketch prepared by Robert L. McCarthy who was then living in Danville but was being transferred back to Lynchburg. McCarthy liked the location in Richland Hills and asked petitioner about building him a house in that location which petitioner consented to do. While the house was being built a discussion arose in regard to a superhighway interchange coming through this subdivision and McCarthy said he did not know whether he wanted to live there or not. Petitioner told McCarthy that he would not hold him to his verbal agreement; that he was going to build the house anyway as an investment; and that if McCarthy did not want the house he did not have to take it. After the house was completed in October 1956, McCarthy rented *20 it for a while and later bought the property on January 29, 1957. This property was held by petitioner primarily for sale to customers in the ordinary course of his trade or business. Boyd This property was located on Roundelay Circle. Construction of the house was begun on April 1, 1956, and was completed on July 1, 1956. This was one of the first houses petitioner built with the idea of renting it. After the house was built petitioner listed the house for rent with Thomas W. Graves, a real estate agent. This was at the time of the period of upsurge in business activity in Lynchburg. As a result of the business upsurge Graves induced petitioner to let him sell the property. Petitioner told Graves he would rather rent the property but finally agreed to selling the property which occurred on April 3, 1957. The property was held for more than 6 months prior to the sale. It was not held by petitioner primarily for sale to customers in the ordinary course of his trade or business. Royal Oaks This property which is also known as the Freeman property is located in Bedford County in a subdivision adjoining the city limits of Lynchburg. Petitioner built the house on this property *21 as an investment proposition. He did a great deal of the work himself by working on Saturdays, nights, and afternoons when his other work was completed. Petitioner began building the house on March 19, 1957, and completed it on April 19, 1958. Although petitioner intended to rent this property when it was completed, the new people coming into Lynchburg as a result of the business upsurge were more interested in buying a house than in renting one. In 1959, J. M. Brown, a real estate agent met petitioner on the street and persuaded petitioner to sell the house rather than rent it and invest the proceeds in a filling station which petitioner did. The property was sold on September 26, 1959. It was held for more than six months prior to the sale. It was not held by petitioner primarily for sale to customers in the ordinary course of his trade or business. Savoy Place This property was located in Downing Woods, Lot 25. Petitioner built this house, mainly out of second-hand material, as an investment proposition. Construction began on May 8, 1958, and was completed on March 20, 1959. On or about October 29, 1959, petitioner traded this property for a house at 1917 Rivermont Avenue. *22 He sustained a loss of $5,173.09 on the trade. The property was held for more than six months prior to the trade. It was not held by petitioner primarily for sale to customers in the ordinary course of his trade or business. Bishop This property was located on Brookville Lane in Richland Hills, Lots 56-57. The lots on which the house was built were among the first lots petitioner bought in Richland Hills. Construction of the house began September 30, 1957, and was completed November 15, 1958. Normally it would take about three months to build a house like the one on this property but petitioner only worked on it off and on whenever he could find the time. Petitioner built the house from a sketch in a magazine. It was built from used material. Because of the material with which it was built, petitioner definitely did not build the house for sale, as his reputation was at stake; he intended it only as an investment for rental. However, at that time the people in Lynchburg were not interested in renting property; they were interested only in buying. Petitioner, finally, on June 9, 1959, sold the property not as a new house but as one built with second-hand materials. The property *23 was held for more than six months prior to the sale. It was not held by petitioner primarily for sale to customers in the ordinary course of his trade or business. Gifford-Link Road This property was located in the Evergreen Subdivision, Lot 10, Block B. Like the Fazzi property, petitioners built the house on this property with the intention of using it as their residence. Construction of the house began on January 20, 1958, and was completed on May 31, 1958. After the house was completed, the health of petitioner's wife's parents became such that petitioners were undecided whether actually to move or not. While in this state of indecision, Hopkins Brothers, a real estate firm, approached petitioner with the idea of petitioner's selling the property. As a result of this approach, petitioner very reluctantly permitted Hopkins Brothers to list the property under the multiple-listing system. Under this system, other realtors who are subscribers could attempt to sell the property. On January 5, 1959, the property was sold by the real estate firm of Carrington-Dirom-Basten, Inc. The property was held more than six months prior to the sale. It was not held by petitioner primarily for *24 sale to customers in the ordinary course of his trade or business. Opinion The answer to whether petitioners are entitled to capital gain treatment on the disposition of the seven properties mentioned in our findings depends upon how the facts concerning those properties square with sections 1202, 1221, and 1222 of the Internal Revenue Code of 1954, the material provisions of which are in the margin. [1]
*25 It may be noted at the outset that on the 1959 return petitioners reported the gain of $5,148.06 from the sale of the Royal Oaks property as a "short-term capital gain" and the loss of $5,173.09 from the trade of the Savoy Place property as a "short-term capital loss." The respondent in his deficiency notice made no change as to these two properties but as to the other five he "determined that profit resulting from the sale of improved real estate constitutes ordinary income rather than long-term capital gain as reported in your return." Petitioners in their assignment of error alleged that the respondent erred as to all seven pieces of property. The case has been tried as if all seven pieces of property were at issue, and we have considered the case on that basis. The reason for mentioning the point is that the parties have stipulated that both the Royal Oaks and the Savoy Place properties were held more than six months rather than less than six months which will mean that only 50 percent of the profit from Royal Oaks will be taxed and only 50 percent of the loss from Savoy Place will be allowed instead of 100 percent. The factors necessary for a decision in this case are all *26 questions of fact to be resolved from the evidence. The first factor to be resolved is whether the seven parcels of property constituted "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business" as those words are used in section 1221(1), supra. The respondent contends that we should find that they were so held and that, therefore, by definition not any of the properties was a capital asset. We agree with the respondent as to the McCarthy property but as to the other six properties we have found as a fact from the evidence that each of the six properties was not held by petitioner primarily for sale to customers in the ordinary course of his trade or business. It follows that these six properties are capital assets as the term "capital asset" is defined in section 1221, supra. The next important factor is whether the six properties that are capital assets were held for more than six months prior to their disposition. This factor has been stipulated as to all the six properties except Fazzi and we have found in accordance with the stipulation as to those five properties. As to Fazzi, we have found from the evidence that Fazzi *27 was held for more than six months prior to the sale. On their return petitioners reported the property as acquired on October 9, 1956, and as sold on May 9, 1957. This would be a holding period of more than six months. Petitioner testified definitely that the property was held for more than six months. There was some testimony by petitioner's wife and the real estate agent Maurice T. McCarthy, that might cast some doubt on whether the property was held for more than six months prior to the sale. We have, however, considered all the evidence and have found for the petitioners on this point that the Fazzi property was held for more than six months prior to the sale. The deficiencies should be recomputed in accordance with this Opinion. Decision will be entered under Rule 50. Footnotes
1. SEC. 1202. DEDUCTION FOR CAPITAL GAINS. In the case of a taxpayer other than a corporation, if for any taxable year the net long-term capital gain exceeds the net short-term capital loss. 50 percent of the amount of such excess shall be a deduction from gross income. * * * SEC. 1221. CAPITAL ASSET DEFINED. For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include - (1) * * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; SEC. 1222. OTHER TERMS RELATING TO CAPITAL GAINS AND LOSSES. For purposes of this subtitle - (1) Short-term capital gain. - The term "short-term capital gain" means gain from the sale or exchange of a capital asset held for not more than 6 months * * * (2) Short-term capital loss. - The term "short-term capital loss" means loss from the sale or exchange of a capital asset held for not more than 6 months * * * (3) Long-term capital gain. - The term "long-term capital gain" means gain from the sale or exchange of a capital asset held for more than 6 months * * * (4) Long-term capital loss. - The term "long-term capital loss" means loss from the sale or exchange of a capital asset held for more than 6 months * * * (5) Net short-term capital gain. - The term "net short-term capital gain" means the excess of short-term capital gains for the taxable year over the short-term capital losses for such year. (6) Net short-term capital loss. - The term "net short-term capital loss" means the excess of short-term capital losses for the taxable year over the short-term capital gains for such year. (7) Net long-term capital gain. - The term "net long-term capital gain" means the excess of long-term capital gains for the taxable year over the long-term capital losses for such year.↩